265 P.2d 1013

**GLENN v. GIBBONS & REED CO.**

No. 7952.

Supreme Court of Utah.

Feb. 5, 1954.

Richards & Bird, Dan S. Bushnell, Salt Lake City, for appellant.

Jones & Jones, Shirley P. Jones, Sr., Salt Lake City, for respondent.

McDONOUGH, Justice.

Appeal from a judgment on a directed verdict of no cause of action, setting aside a verdict of the jury for plaintiff.

Plaintiff was the owner of a Bucyrus-Erie shovel, which he lent to one Vic Newman with the understanding that Newman would allow plaintiff the use of Newman's shovel when it was repaired. Newman had a contract with the defendant to shovel and load gravel from its pit for which he was to be paid ten cents per yard of delivered material. Defendant exercised no control over Newman but was engaged with its own men and equipment in blasting and preparing the material in the same area. Under plaintiff's evidence, defendant allowed Newman and its own men to shovel gravel until the face of the pit became 60 to 100 feet in height, which height, according to plaintiff's expert, is known to men in the industry to be hazardous, especially considering the propensities of a loose aggregate such as gravel. Plaintiff's expert testified that one must always anticipate a breakage in the face and if the face is high there is a considerable depth over which breakage might occur.

There is evidence in the record that Gordon T. Hyde, a lessee of a portion of

the property, protested to defendant's foreman, that the operation was a dangerous one and warned him against removing a wedge of material which he considered a key to the support of the bank. He testified also that a commercial powder man came out and inspected the bank and refused to perform any blasting work for the defendant. Some attempt was made by the defendant company to raise the shovel operation on the face so that the digging would not go constantly to the bottom of the pit, in accordance with a method known as "terracing" the hill, but the material on the higher level was found to be unfit for immediate use and would require extra handling to suit it to the purpose of the supply. Because of this, defendant returned to its former method, taking out 73,386 yards of gravel, whereas it had anticipated removing only 20,000 yards at the beginning of its operation.

After Newman had been working under his contract with defendant for five days, plaintiff visited the site and spoke to Newman's employee who was operating his shovel, telling him that he thought that the conditions were dangerous and that he wanted his shovel removed from the pit. The employee answered that he took orders only from Newman and plaintiff left, after making an unsuccessful attempt to find Newman or some of the Gibbons and Reed men. That night blasting was continued, and after the powder men had left, a tremendous slide occurred, burying plaintiff's shovel under the material from the mountain. Apparently, a slide of this proportion was not anticipated even by Mr. Hyde or the other men who warned of the possible dangers of the operation, although they did recognize the possibility of dangerous sloughing off of loose gravel from the face of the pit.

Defendant's motion for a directed verdict was based upon the contentions that (1) the company owed no duty to plaintiff, (2) there is no actionable negligence on the part of the defendant, and (3) plaintiff was contributorily negligent.

Whether defendant owed a duty to plaintiff, when it did not realize that Newman was operating plaintiff's shovel rather than his own, is a question which must be analyzed with respect to the duty owed by defendant to Newman. Defendant contends that Newman was at most a licensee upon its property, but this is not borne out by the evidence. We need not delve into the difficult questions involved in an implied invitation, for here Newman received an express invitation to go upon the land of the defendant by virtue of his contract with the defendant to shovel gravel for their mutual business advantage. Therefore, Newman was a business invitee upon the property and the company owed him the duty of conducting its known dangerous activities with reasonable care for his safety. Restatement of Torts, sec. 346. This, of course, is equally applicable to the equipment which he

brought upon the land in furtherance of his contract with the defendant.

■ Defendant further argues that Newman contributed to the disaster and assumed the risk by leaving the shovel in a dangerous place and by continuing to operate under conditions which appeared as patently dangerous to him as they did to the company. While this may be true as to Newman, contributory negligence of the bailee cannot be imputed to the bailor of property. Conklin v. Walsh, 113 Utah 276, 193 P.2d 437. Likewise, because there is no agency relationship created by a bailment, Newman's knowledge of the danger would not be imputed to the plaintiff here. Thus, although defendant may have had an adequate defense against Newman had it been his shovel which was damaged by the slide, this defense is not available in an action by the present plaintiff.

■ Defendant's contention that there was no actionable negligence on the part of the defendant presents a more difficult question. Inasmuch as the defendant was granted a directed verdict, we must view the evidence in the light most favorable to the plaintiff to determine whether or not there was sufficient evidence to go to the jury. Finlayson v. Brady, Utah, 240 P.2d 491.

As a general rule, negligence will not be presumed from the mere fact of an injury occurring at a time when plaintiff was on the defendant's premises, nor is the owner to be deemed liable in absence of any evidence that such injury was the result of his negligence. 38 Am.Jur., Negligence, sec. 291. However, plaintiff produced evidence to the effect that the operation of the pit was regarded as dangerous by several witnesses before the slide occurred, that there was a safer way to operate although it involved greater expense to defendant, and that the defendant continued its operation despite · protests of men working in the area.

Defendant insists that since the slide was not that type of hazard anticipated by the witnesses, nor had such a slide occurred within the history of the Gibbons and Reed operations in this area, and because it is not precisely demonstrable that defendant's operations caused the slide, the defendant could not have foreseen the harm or the manner in which it occurred and should not be held liable.

Witness Hyde testified that he had seen similar slides in gravel pits operated under the same conditions as here although never to such a great extent, and that "It's not unusual if you take the bottom out. It happens nearly every time." Witness Hansen, an employee of defendant company and the shovel operator who loaded the first 50,000 yards, testified on the basis of the factors previously introduced into evidence—a wet clay base with water running through the gravel at the base and blasting over a period of ap-

proximately a month—that he would expect the vertical bank to slide or slough down. Likewise, plaintiff's expert witness testified, after examining the slide, that, under the circumstances posed by the hypothetical question, the height of the face and the continuous charges of explosive set off at the site could be the efficient cause of the slide as it happened. It is unnecessary to review other evidence of a technical nature inasmuch as this evidence is sufficient to present a jury question as to the proximate cause of the slide.

The fact that the defendant did not foresee the likelihood of such an accident is not controlling here, for it was warned that there was danger to the men working under the vertical bank. Negligence may be the proximate cause of damage even though the actor was not able to foresee the injury in the precise form in which it occurred, nor to anticipate the precise damage which would result from his negligence. Mountain States Tel. & Tel. Co. v. Consolidated Freightways, Utah, 242 P.2d 563, Furkovich v. Bingham Coal & Lumber Co., 45 Utah 89, 143 P. 121, L.R.A.1915B, 426.

The third basis for the motion for the directed verdict was that plaintiff was contributorily negligent as a matter of law. When the plaintiff viewed the pit, he became alarmed that his shovel was in a position of danger and when the operator refused to move the shovel without direction from Newman, plaintiff did nothing further to extricate his property from the peril. Apparently, defendant contends that plaintiff was under a duty to seize the shovel, which was then under the control of his bailee, and drive it out of the pit himself. Plaintiff had no knowledge of the probable presence of water and wet clay at the base of the gravel and no knowledge of blasting to be performed that night; his protest was based simply on the height of the face. Had he known all of the facts, he may have been held to a higher degree of care. Knox v. Snow, Utah, 229 P.2d 874. Too, more than one inference can be here drawn as to what a reasonably prudent man would do under the particular circumstances, which makes the question of contributory negligence one for the jury. Baker v. Decker, 117 Utah 15, 212 P.2d 679.

The judgment is reversed and the verdict of the jury reinstated. Costs to appellant.

CROCKETT and WADE, JJ., concur.

WOLFE, C. J., and HENRIOD, J., do not participate.