2007 UT App 249

**Donna JEX, Plaintiff and Appellant,**

v.

**JRA, INC., dba Hickory Kist Deli; James Fillmore; and Angela Fillmore, Defendants and Appellees.**

No. 20060571–CA.

Court of Appeals of Utah.

July 19, 2007.

Denton M. Hatch, Spanish Fork, for Appellant.

Robert L. Janicki and Michael L. Ford, Salt Lake City, for Appellees.

Before Judges BILLINGS, ORME, and THORNE.

## OPINION

BILLINGS, Judge:

¶1 Plaintiff Donna Jex appeals the trial court's order granting summary judgment in favor of Defendants JRA, Inc. dba Hickory Kist Deli, James Fillmore, and Angela Fillmore. We affirm in part and reverse and remand in part.

## BACKGROUND

¶2 On the morning of January 26, 2004, new snow had just fallen. James Fillmore, owner of Hickory Kist Deli (Hickory Kist), arrived at Hickory Kist for work at approximately 5:00 a.m. He entered the store through the back door. At about 5:30 a.m., Sharlene Barber, an employee at Hickory Kist, also arrived at the store for work. Generally, Barber turns on the store lights when she first arrives at the store, but Bar-

ber cannot remember whether she turned the lights on that morning.

¶ 3 At approximately 6:30 or 7:00 a.m., Fillmore finished removing snow from outside the front of the store and spreading ice melt over the front walkways. He then walked through the front door and proceeded to the back of the store to begin cooking. Around 7:00 a.m., Barber placed mats on the floor at the front of the store. Once the mats were down, a person could walk on the mats from the front door of the store to the cash register located approximately twenty-five feet away. However, upon reaching the cash register, a person would have to step off the mats and onto the hardwood floor to proceed to the back of the store.

¶ 4 Jex came into Hickory Kist sometime before 8:30 a.m. She was the first customer of the day. However, sometime before Jex entered the store, a Pepsi salesman had entered and walked to the back of the store. When Jex entered the store, she noticed that the lights in the store were dim, as if some lights had not yet been turned on. Jex reached the area in the store where the cash register is located and then turned right to go to the back of the store. She intended to place an order and noticed that nobody was at the counter. As she turned, she slipped on the hardwood floor due to a puddle of water approximately four inches in diameter.

¶ 5 Although Fillmore did not inspect the floor prior to the accident that morning, he speculated that the water either came from his shoes or Jex's shoes. Jex was wearing boots with new, but small, tread. Fillmore and Barber were both wearing shoes with deep tread.

¶ 6 Fillmore knew that for persons wearing hard rubber shoes, the hardwood floor was slippery when wet. Typically, Fillmore decides where to place the mats in his store, and although he had placed a mat in the area where the accident occurred on other occasions, he did not place a mat there at the time of the accident because the one he intended to use had a turned-up edge. Moreover, Fillmore acknowledged that keeping floors clean and water free is important; therefore, he instructs employees to stop what they are doing and take care of the floor if there is something on the floor. In maintaining the store's cleanliness throughout the day, Hickory Kist employees are required to perform various tasks such as wiping down the tables and ensuring that everything is in proper order for customers. The employees' daytime tasks do not, however, include periodically mopping the store floors. Instead, this task is performed at night after the store is closed.

¶ 7 Jex broke her wrist and injured her back when she fell in Hickory Kist. She filed this lawsuit to recover for her injuries. Jex and Defendants filed cross-motions for summary judgment. The trial court granted Defendants' summary judgment motion and denied Jex's summary judgment motion. Jex now appeals.

## ISSUES AND STANDARD OF REVIEW

¶ 8 Jex argues that the trial court erred when it granted summary judgment in favor of Defendants. Specifically, Jex asserts that the trial court erred in holding that she could not recover under either of the two negligence theories she asserted against Defendants for the injuries she received from her slip-and-fall accident in Hickory Kist. Jex also argues that summary judgment in this case is improper because issues of material fact exist. "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(c). "On appeal, we review the district court's ruling on summary judgment for correctness." *Jackson v. Mateus*, 2003 UT 18, ¶ 6, 70 P.3d 78.

## ANALYSIS

¶ 9 In Utah, a business owner is not required to ensure that his business invitees will not slip and fall. *See Martin v. Safeway Stores, Inc.*, 565 P.2d 1139, 1140 (Utah 1977) ("[P]roperty owners are not insurers of the safety of those who come upon their property, even though they are business invitees."); *Preston v. Lamb*, 20 Utah 2d 260, 436 P.2d 1021, 1023 (1968). Instead, a business owner "is charged with the duty to use reasonable care to maintain the floor of his establish-

ment in a reasonably safe condition for his patrons." *Schnuphase v. Storehouse Mkts.*, 918 P.2d 476, 478 (Utah 1996) (quotations and citation omitted).

¶ 10 In considering a store owner's duty of reasonable care in slip-and-fall cases, we note that "slip-and-fall cases have usually been regarded as falling into ... two different classes [of negligence]." *Allen v. Federated Dairy Farms*, 538 P.2d 175, 176 (Utah 1975). The first class of cases "involves some unsafe condition of a *temporary* nature, such as a slippery substance on the floor[,] and usually ... it is not known how it got there." *Id.* The "second class ... involves some unsafe condition of a *permanent* nature, such as[ ] in the structure of the building, or of a stairway, etc. or in equipment ... or its manner of use, which was created or chosen by the defendant (or his agents), or for which he is responsible." *Id.* Jex argues that she can recover under either the temporary condition or the permanent condition theory of liability.

### I.  Temporary Condition

¶ 11 Jex contends that the trial court erred in determining that she could not recover under the temporary condition theory. Under the temporary condition theory, a plaintiff can only recover if the defendant has notice of the dangerous condition. Specifically, the following two conditions must be satisfied: (1) "that [the defendant] had knowledge of the condition, that is, either actual knowledge[ ] or constructive knowledge because the condition had existed long enough that he should have discovered it; and [ (2) ] that after such knowledge, sufficient time elapsed that in the exercise of reasonable care he should have remedied it." *Id.* "The variant of this rule, however, is 'that if the condition ... was created by the defendant himself or his agents or employees, the

notice requirement does not apply.'" *Silcox v. Skaggs Alpha Beta, Inc.*, 814 P.2d 623, 624 (Utah Ct.App.1991) (quoting *Long v. Smith Food King Store*, 531 P.2d 360, 361 (Utah 1973)). Therefore, "it is important to distinguish between the situation where the [condition] causing the injury was [created] ... by the employer-store or its employee, or [was created] by some third person." *Koer v. Mayfair Mkts.*, 19 Utah 2d 339, 431 P.2d 566, 569 (1967).

### A.  Temporary Condition Created by a Third Person

¶ 12 First, regarding whether Fillmore or his employees had notice of a dangerous condition created by a third party,[1] it is undisputed that neither Fillmore nor his employees had actual knowledge that there was water on the store's hardwood floors. Instead, Jex asserts that they had constructive notice because the water was on the floor long enough that the owner or employees should have discovered it. *See Schnuphase*, 918 P.2d at 478.

¶ 13 Although Utah case law does not lay out precise factors for determining whether a store owner[2] had constructive notice of a dangerous condition, it does establish that constructive notice is imputed when "the condition had existed long enough that [the store owner] should have discovered it." *Id.* "Thus, the importance of the time factor to the issue of constructive notice is clear." R.D. Hursh, Annotation, *Liability of Proprietor of Store, Office, or Similar Business Premises for Injury from Fall on Floor Made Slippery by Tracked-in or Spilled Water, Oil, Mud, Snow, and the Like*, 62 A.L.R.2d 6, § 7b (1958). To establish that a temporary condition existed long enough to give a store owner constructive notice of it, a plaintiff must present evidence that "would

---

**1.** We address Jex's legal argument that Fillmore or Barber had notice of the puddle of water on the floor based solely on the fact that a Pepsi salesman entered the store prior to Jex entering the store. Otherwise, our analysis would be unnecessary. The notice requirement is only at issue if the puddle of water was created by some third person. Since Jex was Hickory Kist's first customer of the day, the only persons who could have created the puddle of water were Jex, Fill-

more, Barber, or the Pepsi salesman. Without the Pepsi salesman's entrance into Hickory Kist, there would be no other third person that could have caused the puddle of water on the floor.

**2.** For the sake of convenience, our analysis regarding a store owner also encompasses a store owner's employees and agents.

show from the condition of the debris on the floor that it had been there for an[ ] appreciable time." *Ohlson v. Safeway Stores, Inc.*, 568 P.2d 753, 754 (Utah 1977). Constructive notice cannot be grounded on speculation or mere allegation. *See Lindsay v. Eccles Hotel Co.*, 3 Utah 2d 364, 284 P.2d 477, 478 (1955) ("[A] jury cannot be permitted to speculate that the defendant was negligent."); *cf. Koer*, 431 P.2d at 570 ("[A] mere fall does not prima facie establish a jury question.").

¶ 14 In determining whether a store owner had constructive notice of a dangerous condition, we look to various Utah slip-and-fall cases. In *Lindsay v. Eccles Hotel Co.*, 3 Utah 2d 364, 284 P.2d 477, 478 (1955), the plaintiff slipped and fell on a small quantity of water on the floor in the defendant's coffee shop. *See id.* at 478. The water "somehow got on the floor some time after [the plaintiff] was seated." *Id.* The court found that the plaintiff could not recover because "there was no evidence as to how the water got onto the floor, by whom it was deposited, exactly when it arrived there or that the defendant had knowledge of its presence." *Id.* Similarly, in *Koer v. Mayfair Markets*, 19 Utah 2d 339, 431 P.2d 566 (1967), the court determined that a plaintiff could not recover after she slipped and fell on a grape found on the floor of a grocery store. *See id.* at 569–70. The court reasoned that from the evidence, it was unable "to find any support for the further and necessary inference that th[e dangerous] condition was caused by an act of the defendant, or that the defendant had actual or constructive knowledge of it." *Id.* at 569. And in *Allen v. Federated Dairy Farms, Inc.*, 538 P.2d 175 (Utah 1975), the court found that a plaintiff could not recover from injuries he sustained after he slipped and fell on some cottage cheese on a store floor. *See id.* at 177. The court noted that there was "no evidence, nor any basis from which a fair inference could be drawn, that the defendant had knowledge of the cottage cheese on the floor." *Id.*

¶ 15 In contrast, in *Ohlson v. Safeway Stores, Inc.*, 568 P.2d 753 (Utah 1977), the Utah Supreme Court determined that it was reasonable for a jury to find that a store owner had constructive notice of a dangerous condition in the store. *See id.* at 754–55. In that case, the plaintiff slipped and fell on some dry spaghetti on a grocery store floor. *See id.* at 754. According to the evidence presented at trial, "the spaghetti was dirty, crushed, broken into small pieces, and . . . extended from aisle ten around the end of that aisle into the main aisle for five or six feet toward the cash register at the front of the store." *Id.* The evidence also indicated that "a casual glance down the aisle" forty-five minutes before the accident was the only inspection of the store floor during the store's busiest time of day. *Id.* at 755. Moreover, the aisle in which the spaghetti was strewn was visible from the cash register. *See id.* Affirming the jury verdict in favor of the plaintiff, the supreme court concluded that the evidence supported a jury finding that the dangerous condition had existed for some time, and that the store owner had constructive notice of the condition. *See id.*

¶ 16 In this case, there is no direct evidence suggesting that the puddle of water had been there for any significant period of time. Further, there was nothing about the puddle itself suggesting that it had been there for a long time. Nor is there any reasonable inference that the store owner should have been aware of a four-inch puddle of water on the hardwood floor. Therefore, we conclude that conjecture and speculation is the only way to determine the length of time the puddle was on the floor, and thus, it would be improper to impute constructive notice to Defendants.

**B. Temporary Condition Created by Hickory Kist's Owner or Employee**

¶ 17 Second, Jex argues that even if Defendants did not have constructive notice of the dangerous condition, she can still recover under the temporary condition theory because either Fillmore or Barber themselves created the condition. Although it is well settled that a store owner must have notice of a dangerous condition, "[t]he variant of this rule . . . is that if the condition . . . was created by the defendant himself or his agents or employees, the notice requirement does not apply." *Silcox v. Skaggs Alpha*

*Beta, Inc.*, 814 P.2d 623, 624 (Utah Ct.App. 1991) (quotations and citation omitted). In *Silcox v. Skaggs Alpha Beta, Inc.*, 814 P.2d 623 (Utah Ct.App.1991), the plaintiff slipped and fell on some water that came from melting bags of ice stacked on a stocking cart. *See id.* at 624. The court found that a reasonable inference could be drawn that a cart for stacking groceries was left by a store employee, creating a foreseeable risk of harm. *See id.* at 624–25.

¶ 18 Again, in this case, there is no direct evidence indicating who actually caused the water puddle. Still, in *Silcox* we determined that "[i]t is for the jury to decide, *even if only as a matter of inference*, whether one of [a] defendant['s] employees created the risk of harm." *Id.* at 625 (emphasis added). In this case, the evidence suggests that the source of the water puddle could have been Fillmore, Barber, the Pepsi salesman, or even Jex herself. However, we note that while Jex was wearing boots with small tread, both Fillmore and Barber were wearing shoes with deep tread. Moreover, we note that Jex was the first customer of the day and slipped shortly after she entered Hickory Kist. Based on this evidence, a jury could reasonably infer that the puddle of water on the floor was caused by Fillmore or one of his employees, and thus, we reverse and remand as to the issue of whether Hickory Kist's owner or employee created the puddle of water.

## II. Permanent Condition

¶ 19 Next, Jex asserts that she could recover under the permanent condition theory of liability because Hickory Kist used a wood floor that it knew was slippery when it became wet and because Fillmore failed to direct his store employees to use mats in areas of high customer traffic. Under this theory of liability, the dangerous condition must be both inherently dangerous and foreseeable. *See Schnuphase v. Storehouse Mkts.*, 918 P.2d 476, 477 (Utah 1996).

¶ 20 In *Canfield v. Albertsons, Inc.*, 841 P.2d 1224 (Utah Ct.App.1992), the plaintiff slipped on a piece of lettuce in a grocery store. *See id.* at 1225. The store displayed its lettuce as a "farmer's pack," meaning that the lettuce did not have its wilted leaves removed. *Id.* The store placed empty boxes on the floor where customers could place the discarded lettuce leaves. *See id.* This court determined that "[i]t was reasonably foreseeable that some leaves would fall or be dropped on the floor by customers thereby creating a dangerous condition." *Id.* at 1227.

¶ 21 This same theory—that a store owner is liable for injuries caused by a foreseeable, inherently dangerous condition in the store— was addressed in *Schnuphase v. Storehouse Markets*, 918 P.2d 476, 478 (Utah 1996). However, in *Schnuphase*, the Utah Supreme Court limited the *Canfield* holding, noting that "[c]entral to [the court's] finding in *Canfield* was the determination that [the store] had notice of the potentially hazardous condition, as evidenced by the store's placement of empty boxes and its instituting a regular schedule for inspecting and cleaning the produce section" of the store. *Id.* at 479. It emphasized that "inherent danger and foreseeability remain essential elements of the claim," *id.*, and suggested some concern about extending a store owner's liability in method of operation cases, *see id.; Babbitt v. 7–Eleven Sales Corp.*, 2000 UT App 50U, 2000 WL 33243765 (mem.) (indicating that the *Schnuphase* court "expressed concern with extending store owner liability in method of operation cases").

¶ 22 In *Schnuphase*, the plaintiff was injured when she slipped and fell on some ice cream that was on the floor in the deli section of the defendant's store. *See id.* at 477. The plaintiff claimed that the defendant failed to take the proper precautionary measures to ensure the store floor remained clear and safe for store customers. *See id.* at 479. The court concluded that the "plaintiff failed to present sufficient evidence on a claim of negligent mode of operation and that reasonable minds could not differ on the question of whether [the store owner] took reasonable precautions to protect its customers." *Id.*

¶ 23 In this case, given the limiting effect of *Schnuphase* and the lack of direct evidence indicating that Defendants chose a method of operation that was inherently dangerous and foreseeable, we conclude that Defendants were not negligent. Unlike the de-

fendant in *Canfield,* Defendants did not have notice that they created a potentially hazardous condition.[3]

## CONCLUSION

¶ 24 Under the temporary condition theory of negligence, we affirm the trial court's holding that neither Fillmore nor his employees had actual or constructive knowledge of the puddle of water creating the dangerous condition on Hickory Kist's floor. However, we reverse and remand as to whether Fillmore or his employees created the puddle of water. As to the permanent condition theory of negligence, we affirm the trial court's ruling that there is no evidence suggesting that Fillmore "chose a method of operation that created an inherently dangerous condition, and that the inherently dangerous condition was foreseeable."

¶ 25 WE CONCUR: GREGORY K. ORME, Judge, and WILLIAM A. THORNE, Judge.

---

**3.** Based on our prior discussion, we do not find issues of material fact that preclude summary judgment, except as to whether the Hickory Kist store owner or employee created the puddle of water.