2008 UT 67

**Donna JEX, Plaintiff, Respondent, and Cross–Petitioner,**

v.

**JRA, INC., dba Hickory Kist Deli; James Filmore; and Angela Filmore, Defendants, Petitioners, and Cross–Respondents.**

No. 20070651.

Supreme Court of Utah.

Sept. 16, 2008.

Denton M. Hatch, Spanish Fork, for plaintiff.

Robert L. Janicki, Michael L. Ford, Salt Lake City, for defendants.

DURRANT, Associate Chief Justice:

¶ 1 Donna Jex ("Jex") slipped and fell on a puddle of water in the Hickory Kist Deli ("Hickory Kist"), injuring her wrist and back. She sought damages from Hickory Kist. The district court granted summary judgment in favor of Hickory Kist, and Jex appealed. The court of appeals affirmed in part and reversed in part. Hickory Kist petitioned for certiorari, and Jex cross-petitioned. We granted Hickory Kist's petition to determine whether the court of appeals erred in holding as follows:

    (1) Jex cannot recover under a permanent unsafe condition theory because Hickory Kist did not choose a mode of operation that foreseeably could result in an inherently dangerous condition;

    (2) Jex cannot recover under a temporary unsafe condition theory if the unsafe condition was created by a third party because Hickory Kist did not have notice of the unsafe condition; and

    (3) Jex may recover under a temporary unsafe condition theory if the unsafe condition was created by Hickory Kist because the notice requirement does not apply to owner-created temporary unsafe conditions. And because there is a genuine issue of material fact regarding who created the puddle, the case should be remanded for a jury to determine whether Hickory Kist created it.

For the reasons detailed below, we affirm the court of appeals' holding on each issue and remand to the district court for further proceedings.

## BACKGROUND

¶ 2 It snowed on the morning of January 26, 2004. James Fillmore, the owner of Hickory Kist, arrived at the deli at about 5:30 a.m. and entered the store through the back door. His employee, Sharlene Barber, arrived at approximately the same time. At approximately 6:30 or 7:00 a.m., Fillmore finished removing snow from the sidewalks in front of the store and spread ice melt on the

walkways. He then walked through the front door of the store and into the back of the store, where he began cooking. Around 7:00 a.m., Barber put the floor mats down in such a way that a person could walk on the mats from the front door of the store to the cash register. But to proceed to the back of the store, a person had to step off the mats and onto the hardwood floor. In addition to Fillmore and Barber, a Pepsi salesman entered and walked to the back of the store sometime before the store opened.

¶ 3 Jex was the first customer at Hickory Kist that morning. She arrived sometime before 8:30 a.m. and walked to the cash register. She then turned and began to walk to the back of the store, and, as she did, she slipped on a puddle of water that was about four inches in diameter. Jex fell to the hardwood floor, breaking her wrist and hurting her back.

¶ 4 Before Jex fell, neither Fillmore nor Barber knew of the puddle of water on the store's floor. Jex also did not notice the puddle of water until after she slipped on it. Fillmore did not inspect the floor before Jex fell, but he speculated that the water came either from his shoes or Jex's shoes. Fillmore and Barber were both wearing athletic shoes with deep tread, while Jex was wearing new boots with shallow tread. Fillmore acknowledged that keeping the floors clean of water is important but stated that his employees' daytime tasks do not include scheduled floor maintenance such as mopping. Instead, Fillmore testified, the floor is mopped at the end of the work day, after the store is closed.

¶ 5 Jex filed suit against Hickory Kist and its owners, James and Angela Fillmore. Jex alleged that Hickory Kist and its owners were liable for the unsafe condition on the store's floor and asserted two theories of premises liability. First, Jex claimed that Hickory Kist was liable under a permanent unsafe condition theory because Hickory Kist's mode of operation foreseeably could result in an inherently dangerous condition. Second, Jex claimed that Hickory Kist was liable under a temporary unsafe condition theory because (1) Hickory Kist had knowledge of the unsafe condition, and (2) after obtaining such knowledge, Hickory Kist had adequate time to remedy it.

¶ 6 On January 10, 2006, Hickory Kist filed a motion for summary judgment, and Jex filed a cross motion for summary judgment. The district court granted Hickory Kist's motion, ruling in its favor on both theories of liability. First, the district court held that Hickory Kist could not be liable under a permanent unsafe condition theory because "there [was] no evidence that Hickory Kist chose a method of operation that created an inherently dangerous condition, and that the inherently dangerous condition was foreseeable." Second, the district court held that Hickory Kist could not be liable under a temporary unsafe condition theory because Hickory Kist had no "actual knowledge of water on the floor."

¶ 7 Jex appealed, and the court of appeals affirmed in part and reversed in part. The court of appeals affirmed the district court's ruling that Hickory Kist could not be liable under a permanent unsafe condition theory because of the "lack of direct evidence indicating that [Hickory Kist] chose a method of operation that was inherently dangerous and foreseeable." [1] In addressing the temporary unsafe condition theory, the court of appeals made two separate rulings. First, it affirmed the district court's ruling that Hickory Kist could not be liable under a temporary unsafe condition theory if the condition was created by a third party because the notice requirement applies, and Jex failed to establish that Hickory Kist had any notice of the puddle of water.[2] Second, however, the court of appeals held that the notice requirement does not apply to temporary unsafe conditions that are "created by the defendant himself or his agents." [3] Accordingly, the court of appeals reversed and remanded for the jury to determine whether Hickory Kist created the puddle and might therefore be liable for Jex's injuries.

---

1. *Jex v. JRA, Inc.*, 2007 UT App 249, ¶ 23, 166 P.3d 655.

2. *Id.* ¶ 16.

3. *Id.* ¶ 17 (citations omitted).

¶ 8 We granted certiorari to review the court of appeals' decision, which we now affirm. We have jurisdiction pursuant to Utah Code Ann. 78A–3–102(3)(j) (Supp.2008).

## STANDARD OF REVIEW

¶ 9 On certiorari, we review the court of appeals' decision for correctness.[4]

## ANALYSIS

¶ 10 Our analysis begins with a review of the court of appeals' decision that Jex cannot recover under a permanent unsafe condition theory. We then review the court of appeals' two rulings regarding Jex's recovery under a temporary unsafe condition theory. In this regard, the court of appeals found first that Jex cannot recover under a temporary unsafe condition theory if the temporary unsafe condition was created by a third party because Hickory Kist had no notice of the puddle of water. The court found second that Jex may recover under a temporary unsafe condition theory if the unsafe condition was created by Hickory Kist because the notice requirement does not apply to owner-created temporary unsafe conditions.

## I. PERMANENT UNSAFE CONDITION THEORY

¶ 11 To recover under a permanent unsafe condition theory, a plaintiff must show that an owner chose a mode of operation that foreseeably could result in an inherently dangerous condition.[5] The court of appeals affirmed the district court's grant of summary judgment in favor of Hickory Kist under this theory of liability, and we affirm.

¶ 12 Jex claims that she may recover under this theory because Hickory Kist "chose to employ a floor surfacing that was inherently dangerous when wet." Jex cites *Canfield v. Albertsons, Inc.*[6] as support for her claim, but *Canfield* is clearly distinguishable.

¶ 13 In *Canfield*, the plaintiff slipped on a piece of lettuce that was part of a lettuce display known as a "farmer's pack," meaning that the lettuce did not have its wilted outer leaves removed.[7] Instead, shoppers were invited to remove the outer leaves and discard them into empty boxes that Albertsons had placed on the floor.[8] The plaintiff slipped on a piece of discarded lettuce on the floor and sued, claiming that the farmer's pack method of display was a permanent unsafe condition. We agreed and emphasized that "[i]t was reasonably *foreseeable* that some leaves would fall or be dropped on the floor by customers thereby creating a *dangerous condition.*"[9] The elements of foreseeability and inherent dangerousness were met.

¶ 14 Jex argues that by installing a wood floor that becomes slippery when wet, Hickory Kist likewise created a foreseeable and inherently dangerous condition for its customers. But Jex points to no evidence that supports her claim. In *Canfield*, we focused on the fact that the store "chose this mode of operation" from among any number of possible lettuce displays and took the affirmative steps of placing lettuce stands and boxes in the path of customers and inviting them to remove lettuce leaves and throw them away in those boxes.[10] In taking these actions, Albertsons should have reasonably foreseen that lettuce leaves would be dropped on the floor. In this case, however, Jex has offered no evidence that Hickory Kist did anything more than install a standard wood floor. Jex offered no evidence, for example, that Hickory Kist installed an unusually slippery wood floor or that it installed its wood floor negligently. While Jex argues that merely installing a floor that can become slippery

---

4. *Pratt v. Nelson,* 2007 UT 41, ¶ 12, 164 P.3d 366.

5. *See Schnuphase v. Storehouse Mkts.,* 918 P.2d 476, 479 (Utah 1996) ("In a series of cases, this court has stated that foreseeability and inherent danger are key elements of a negligence action under the [permanent unsafe condition] theory of liability.").

6. 841 P.2d 1224 (Utah Ct.App.1992).

7. *Id.* at 1225.

8. *Id.*

9. *Id.* at 1227 (emphases added).

10. *Id.* We have emphasized the importance of establishing the element of foreseeability in permanent unsafe condition cases. *See Schnuphase,* 918 P.2d at 479.

when wet satisfies the elements of foreseeability and inherent dangerousness, we have specifically held "that the construction and maintenance of ... [a slippery-when-wet floor surface] ... *does not of itself constitute negligence*" in premises liability cases.[11]

¶ 15 Because the mere installation of a standard wood floor does not constitute a mode of operation that foreseeably could result in an inherently dangerous condition, the court of appeals was correct in affirming the district court's grant of summary judgment for Hickory Kist under a permanent unsafe condition theory.

## II. TEMPORARY UNSAFE CONDITION THEORY

¶ 16 To recover under a temporary unsafe condition theory, a plaintiff must show that (1) the defendant "had knowledge of the condition, that is, either actual knowledge or constructive knowledge because the condition had existed long enough that he should have discovered it;" and (2) "after [obtaining] such knowledge, sufficient time elapsed that in the exercise of reasonable care he should have remedied it."[12] We have also held that "the variant [of this rule is] ... that if the [unsafe] condition or defect was created by the defendant himself or his agents or employees, the notice requirement does not apply."[13] Therefore, "it is important to distinguish between the situation where the [condition] causing the injury was [created] ... by the employer-store or its employee, or [was created] by some third person."[14]

¶ 17 In this case, the court of appeals correctly applied the rule that distinguishes between third party-created conditions and owner-created conditions. It held that the notice requirement applies to temporary unsafe conditions that are created by third parties, and because Hickory Kist had no actual or constructive notice of the puddle, Jex could not recover under this theory. The court of appeals also correctly held that the notice requirement does not apply to temporary unsafe conditions that are created by owners. Applying this holding, the court concluded that there is a genuine question as to who created the puddle, and it remanded the case for a jury to determine whether Hickory Kist created it and might therefore be liable for Jex's injuries. Hickory Kist petitioned for certiorari, and Jex cross-petitioned. For the reasons detailed below, we affirm the court of appeals' rulings.

### A. An Owner Must Have Notice to Be Liable for Temporary Unsafe Conditions Created by a Third Party

¶ 18 It is undisputed that neither Hickory Kist's owner, Fillmore, nor his employee, Barber, had actual knowledge that there was a puddle of water on Hickory Kist's floor. Jex nevertheless asserts that Hickory Kist had constructive notice because the water had been on the floor long enough that the owner or employees should have discovered it. Jex argues that "Utah cases have not set forth clear criteria for determining when constructive notice should be imputed." However, this court has clarified that constructive notice is imputed when "the condition had existed long enough that [the store owner] should have discovered it."[15] "Thus, the importance of the time factor to the issue of constructive notice is clear."[16]

---

11.  *De Weese v. J.C. Penney, Co.*, 5 Utah 2d 116, 297 P.2d 898, 901 (1956) (emphasis added). In *De Weese*, a store owner installed terrazzo flooring in its entryway; terrazzo is a surface that becomes slippery when wet. The plaintiff slipped on the entryway on a day when it had been snowing for 25 to 30 minutes before she slipped. During that time, the store owner failed to put down any mats in the entryway. It was this failure to protect its customers once it knew of the dangerous condition, not its decision to install a slippery floor surface, that subjected the owner to liability for the plaintiff's injuries.

12.  *Allen v. Federated Dairy Farms*, 538 P.2d 175, 176 (Utah 1975).

13.  *Long v. Smith Food King Store*, 531 P.2d 360, 361 (Utah 1973).

14.  *Koer v. Mayfair Mkts.*, 19 Utah 2d 339, 431 P.2d 566, 569 (1967).

15.  *Schnuphase v. Storehouse Mkts.*, 918 P.2d 476, 479 (Utah 1996).

16.  R.D. Hursh, Annotation, *Liability of Proprietor of Store, Office, or Similar Business Premises for Injury from Fall on Floor Made Slippery by*

¶ 19 To establish that a temporary condition existed long enough to give a store owner constructive notice of it, a plaintiff must present evidence that "would show . . . that it had been there for an appreciable time."[17] We have therefore imputed constructive notice to a store owner only when there is some evidence of the length of time the debris has been on the floor. For example, we imputed constructive notice when dry, spilled spaghetti on a store's floor had been there long enough that it had been spread "from aisle ten around the end of that aisle into the main aisle for five or six feet" and was visible from the cash register.[18] We have not, however, imputed constructive notice in cases such as Jex's, where there is no evidence regarding the amount of time the unsafe condition has existed.

¶ 20 In *Lindsay v. Eccles Hotel Co.*,[19] for example, the plaintiff slipped and fell on a small quantity of water on the floor in the defendant's coffee shop. We held that the plaintiff could not recover under a temporary unsafe condition theory because "there was no evidence as to how the water got onto the floor, by whom it was deposited, exactly when it arrived there or that the defendant had knowledge of its presence."[20] In *Koer v. Mayfair Markets*, we again determined that a plaintiff could not recover under this theory after she slipped and fell on a grape because we were unable "to find any support for the further and necessary inference that th[e] [dangerous] condition was caused by an act of the defendant, or that the defendant had actual or constructive knowledge" of it.[21] And in *Allen v. Federated Dairy Farms, Inc.*, we again focused on the issue of notice and held that the plaintiff failed to establish that the store owner had any constructive notice of spilled cottage cheese on which a customer slipped; therefore, the owner could not be liable under a temporary unsafe condition theory.[22]

¶ 21 Similarly, Jex presented inadequate evidence that the puddle of water was on Hickory Kist's floor for an appreciable length of time. Still, she argues that Hickory Kist had knowledge of the puddle based on the fact that the shoes of Fillmore and Barber had deep tread and were therefore more likely than her shallowly treaded shoes to have tracked snow into the store. She also argues that because Fillmore shoveled snow that morning, he was more likely to have tracked snow into the store because he would have been required to step in "large amounts of snow numerous times." Jex relies on these arguments for her claim that Hickory Kist had notice of the puddle; but while these arguments bear upon who created the puddle, they do little to establish how long it had been there. Because the time element is a key factor in imputing constructive notice, we affirm the court of appeals' holding that "conjecture and speculation is the only way to determine the length of time the puddle was on the floor, and thus, it would be improper to impute constructive notice to Defendants."[23]

## B. The Notice Requirement Does Not Apply to Temporary Unsafe Conditions Created By an Owner

¶ 22 Though Jex did not make the argument, the court of appeals held that even if Hickory Kist did not have notice of the puddle, Jex may still recover under the temporary unsafe condition theory because the notice requirement does not apply to temporary unsafe conditions that are created by owners. That is, a plaintiff need not prove that an owner had actual or constructive notice of a temporary unsafe condition if the

*Tracked-in or Spilled Water, Oil, Mud, Snow, and the Like*, 62 A.L.R.2d 6, 7b (1958).

17. *Ohlson v. Safeway Stores, Inc.*, 568 P.2d 753, 754 (Utah 1977).

18. *Id.* at 754–55.

19. 3 Utah 2d 364, 284 P.2d 477 (1955).

20. *Id.* at 478.

21. 19 Utah 2d 339, 431 P.2d 566, 569 (1967).

22. 538 P.2d 175, 177 (Utah 1975) ("[T]here is no evidence, nor any basis from which a fair inference could be drawn, that the defendant had knowledge of the cottage cheese on the floor, nor any opportunity to remove it.").

23. *Jex v. JRA, Inc.*, 2007 UT App 249, ¶ 16, 166 P.3d 655.

owner created the condition. Thus the court of appeals remanded for a jury to determine whether Hickory Kist created the puddle and might therefore be liable for Jex's injuries.

¶ 23 In its petition for certiorari, Hickory Kist argues that an owner must have notice of any temporary unsafe condition—regardless of who creates it—in order to be liable for injuries that result. Because no case has clearly addressed this issue, we take this opportunity to clarify that the notice requirement does not apply to temporary unsafe conditions created by owners.

¶ 24 It is clear that an owner must have notice of a temporary unsafe condition that is created by a third party before the owner will be found liable for injuries that result.[24] In *Long v. Smith Food King Store*, however, we held that "the variant [of this rule is] . . . that if the [unsafe] condition or defect was created by the defendant himself or his agents or employees, the notice requirement does not apply."[25] Hickory Kist argues that this suspension of the notice requirement applies only to permanent unsafe conditions, and that in order to be liable, an owner must always have notice of a temporary unsafe condition, regardless of who creates it. As support for its interpretation, Hickory Kist points to the fact that *Long* specifically addressed a permanent unsafe condition theory of recovery. Hickory Kist also argues that Utah's premises liability law has consistently categorized unsafe conditions as either permanent or temporary and has never before distinguished between temporary unsafe conditions created by third parties and those created by owners. Thus, Hickory Kist claims that "the Utah Court of Appeals misapplied Utah law when it [held] that no notice is required when an owner or employee may have created a temporary unsafe condition." We disagree and affirm the court of

appeals' holding that the notice requirement does not apply to temporary unsafe conditions created by owners.

■ ¶ 25 We have made clear that while "[t]he owner of a business is not a guarantor that his business invitees will not slip and fall . . . [h]e is charged with the duty to use reasonable care to maintain the floor of his establishment in a reasonably safe condition for his patrons."[26] When store owners breach that duty, they may be liable for resulting injuries.

■ ¶ 26 In permanent unsafe condition cases, the notice requirement does not apply because owners are "deemed to know of the condition[s]" they create.[27] We see no reason to apply a different notice requirement to temporary conditions that are created by owners. Thus, in cases where temporary unsafe conditions are created by owners, the notice requirement also does not apply. We emphasize, however, that "negligence will not be presumed" in either permanent or temporary unsafe condition cases.[28] Rather, in permanent unsafe condition cases, a plaintiff must prove an owner's negligence by showing that the mode of operation chosen foreseeably could result in an inherently dangerous condition.[29] And in temporary unsafe condition cases, a plaintiff also must prove that the owner acted negligently either in creating or failing to remedy the temporary unsafe condition. Thus, Jex must prove by a preponderance of the evidence that (1) Hickory Kist created the puddle, and (2) that it was negligent either in creating the puddle or in failing to clean it up before she slipped.

¶ 27 Regarding Jex's first burden, the court of appeals correctly remanded for a jury to determine who created the puddle because Jex presented sufficient evidence from which a jury could conclude that Hicko-

24. *Long*, 531 P.2d at 361.

25. *Id.*

26. *Schnuphase*, 918 P.2d at 478 (quoting *Preston v. Lamb*, 20 Utah 2d 260, 436 P.2d 1021, 1023 (1968)) (internal quotation marks omitted).

27. *Id.*

28. *Glenn v. Gibbons & Reed Co.*, 1 Utah 2d 308, 265 P.2d 1013, 1015 (1954) ("As a general rule, negligence will not be presumed from the mere fact of an injury occurring at a time when plaintiff was on defendant's premises, nor is the owner to be deemed liable in absence of any evidence that such injury was the result of his negligence.").

29. *Schnuphase*, 918 P.2d at 477.

ry Kist did so. First, Jex's shoes had lighter tread than both Fillmore's and Barber's, suggesting that her shoes were less likely to carry the snow. Second, Jex walked over twenty-five feet of mats to reach the counter, suggesting that any snow on her shoes likely would have been removed. Third, Jex was the first customer of the day, limiting the number of people who could have created the puddle to herself, the Pepsi salesman, and the two Hickory Kist employees.

¶ 28 If Jex succeeds in proving that Hickory Kist created the puddle, she then must establish that Hickory Kist was negligent either in creating the puddle or in failing to clean it up before she slipped.

## CONCLUSION

¶ 29 We affirm the court of appeals' holdings on all issues. First, Jex cannot recover under a permanent unsafe condition theory because she failed to prove that Hickory Kist's mode of operation foreseeably could result in an inherently dangerous condition. Second, Jex cannot recover under a temporary unsafe condition theory if the condition was created by a third party because Hickory Kist did not have notice of the puddle. Finally, Jex may recover under a temporary unsafe condition theory if the puddle was created by Hickory Kist because the notice requirement does not apply to owner-created temporary unsafe conditions. And because there is a genuine issue of material fact regarding who created the puddle, we remand the case to the district court for a jury to determine whether Hickory Kist created it and might therefore be liable for Jex's injuries.

¶ 30 Chief Justice DURHAM, Justice WILKINS, Justice PARRISH, and Judge HADFIELD concur in Associate Chief Justice DURRANT'S opinion.

¶ 31 Justice NEHRING does not participate herein; District Judge BEN H. HADFIELD sat.