**2022 UT App 76**

# THE UTAH COURT OF APPEALS

LEE STAFFORD,
Appellant,
*v.*
SANDY PAYDIRT LLC,
Appellee.

Opinion
No. 20210443-CA
Filed June 24, 2022

Third District Court, Salt Lake Department
The Honorable Kara Pettit
No. 180903143

Alan Tucker, Parker A. Allred, and Colby B. Vogt,
Attorneys for Appellant

Cory D. Memmott, Attorney for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES RYAN M. HARRIS and RYAN D. TENNEY concurred.

MORTENSEN, Judge:

¶1   When Lee Stafford encountered a puddle on a hotel elevator's tile floor, he slipped, caught himself, and later sought compensation for a back injury that he believed resulted from the strain. However, after determining that the undisputed facts of the case revealed that the hotel (Hilton)[1] had not breached any duty to Stafford under Utah premises liability law, the district court granted summary judgment in favor of Hilton. Stafford now appeals, and we affirm.

---

1. Sandy Paydirt LLC, the appellee in this case, is a business entity operating a Hilton Garden Inn.

BACKGROUND[2]

¶2      As Stafford stepped into the elevator on Hilton's fifth floor, his foot slipped out from under him. Stafford regained his balance, a feat that kept him from actually falling to the ground. Afterward, in the middle of the elevator's tile floor, he discovered a puddle of water that seemed to smell of chlorine and was only a "[c]ouple of inches across." After Stafford rode the elevator down to the lobby, he found a trail of water leading toward Hilton's pool—a pool separated from the elevator by about one hundred feet of carpeted hallway. Stafford reported the incident to Hilton's staff and his stay at Hilton soon ended. But the lower back pain resulting from the incident did not. Seeking relief from the pain, Stafford incurred substantial medical expenses and sought recovery from Hilton.

¶3      Discovery reflected that the tile installed by Hilton in the elevator was "nonslip" and that Hilton had no knowledge of any other person ever slipping on the hotel's tile generally, and specifically the tile in the elevator. Hilton's representative testified in a deposition about mats found at the hotel entryways and at the pool entry. That testimony included statements that the mat near the pool entry "would help with people walking in and out if they are wet, I guess," but that the mat had not been placed there for "[e]ssentially, slipping purposes." Rather, the mats' "specific purpose" was unknown other than that they were a corporate "require[ment]" and a "welcome touch point . . . as people are walking in."

¶4      Hilton filed a motion for summary judgment, asserting that Stafford had failed to present evidence that Hilton "had either

---

2. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *NetDictation LLC v. Rice*, 2019 UT App 198, n.1, 455 P.3d 625 (cleaned up).

actual or constructive notice" of a "condition of unsafe nature and a reasonable opportunity to remedy the condition prior to the accident." Specifically, Hilton asserted that Stafford had not presented evidence that Hilton had any notice of the water on the floor before Stafford slipped and that he therefore could not demonstrate that the hazard had existed long enough to establish that Hilton had a duty to remedy it. In response, Stafford conceded that Hilton did not have actual or constructive notice of the water he slipped on. Instead, Stafford argued that "the dangerous condition that existed in the elevator was the foreseeable result of decisions that [Hilton] made and for which [it was] responsible." In other words, Stafford argued that the hazard was not a temporary condition that Hilton was obligated to remedy upon notice, but rather, that it was an inherently dangerous and foreseeable permanent condition that required no proof of notice.

¶5    Based on Stafford's concession, the district court granted summary judgment on the temporary condition theory. As to Stafford's claim based on the presence of a "permanent unsafe condition," the court granted summary judgment because Stafford failed to present evidence that Hilton could reasonably foresee that people would come from the pool, cause the tiles to become slippery when wet, and create a dangerous condition.

¶6    Stafford now appeals.

STANDARD OF REVIEW

¶7    "Summary judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law," and "the appellate court reviews a summary judgment for correctness, giving no deference to the trial court's decision." *Bahr v. Imus*, 2011 UT 19, ¶ 15, 250 P.3d 56 (cleaned up).

ANALYSIS

¶8   The key dispute here is whether Hilton, by setting up its hotel with the pool and the elevator in close proximity and by not putting a mat in the elevator, "chose a mode of operation that foreseeably could result in an inherently dangerous condition." *See Jex v. JRA, Inc.* (*Jex II*), 2008 UT 67, ¶ 11, 196 P.3d 576. "In Utah, a business . . . is not required to ensure that . . . business invitees will not slip and fall. Instead, a business . . . is charged with the duty to use reasonable care to maintain the floor of [its] establishment in a reasonably safe condition for [its] patrons." *Jex v. JRA, Inc.* (*Jex I*), 2007 UT App 249, ¶ 9, 166 P.3d 655 (cleaned up), *aff'd*, 2008 UT 67. And "the construction and maintenance of a slippery-when-wet floor surface does not of itself constitute negligence in premises liability cases." *Jex II*, 2008 UT 67, ¶ 14 (cleaned up). Accordingly, to prevail on a permanent unsafe condition theory, Stafford needed to demonstrate *more* than the mere existence of potentially slippery flooring, and this is something he has not done.

¶9   Stafford asserts that the district court failed to give credence to the portion of the Hilton representative's testimony that the mats "would help with people walking in and out if they are wet, I guess." He argues that the court should have viewed this testimony "in the light most favorable to [him,] the non-moving party," as evidence that Hilton knew that water on the tile would cause a slipping hazard. If the court had viewed the testimony this way, Stafford asserts that it would constitute "evidence to show that Hilton had notice that the tile floors in its elevators would present a foreseeable slipping hazard when water from its swimming pool was dripped on it."

¶10   But even viewing this fact as argued by Stafford—that the mats were meant to help wet guests walking in and out of the hotel entrances and pool entry—does not lead us to the conclusion Stafford advances, i.e., that Hilton caused a permanent unsafe

condition by its method of operation. Hilton is therefore still entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(a).

¶11 "To recover under a permanent unsafe condition theory, a plaintiff must show that an owner chose a mode of operation that foreseeably could result in an inherently dangerous condition." *Jex II*, 2008 UT 67, ¶ 11. This includes "cases where the storeowner's method of operation creates a situation where the reasonably foreseeable acts of third parties will create a dangerous condition." *Price v. Smith's Food & Drug Centers, Inc.*, 2011 UT App 66, ¶ 9, 252 P.3d 365. "In such circumstances," as opposed to a situation in which a plaintiff is alleging a *temporary* unsafe condition, "where the defendant either created the condition, or is responsible for it, he is deemed to know of the condition; and no further proof of notice is necessary." *Schnuphase v. Storehouse Markets*, 918 P.2d 476, 478 (Utah 1996) (cleaned up). Rather, "foreseeability and inherent danger are key elements of a negligence action under [a permanent unsafe condition] theory of liability." *Id.* at 479.

¶12 Here Stafford has presented insufficient evidence to support either of those elements.

¶13 Aside from Stafford's contentions about the purpose of the mats Hilton used at its entrances and pool entry (which, for purposes of our analysis, we assume were meant to help wet guests), the remaining facts are undisputed. These facts include that the tile inside the elevator was "nonslip," that the entryway to the pool (from which the water was believed to have come) was separated from the elevator by around one hundred feet of carpeted hallway, and that, to Hilton's knowledge, no person had ever slipped on the tile in the elevator before. These facts do not demonstrate either the foreseeability of Stafford's slip or any inherent danger in installing nonslip tile in the elevator without a mat. And assuming that Hilton did in fact use mats to assist wet guests when entering the hotel or leaving the pool area does not tip the scales in Stafford's favor.

¶14    *Jex II*, 2008 UT 67, 196 P.3d 576, controls here. In that case, a plaintiff entered a deli on a snowy morning, and after stepping off the floor mats that led from the door to the cash register, she slipped and sustained injuries. *Id.* ¶¶ 2–3. The plaintiff sought recovery under a "permanent unsafe condition theory" because the deli "chose to employ a floor surfacing that was inherently dangerous when wet." *Id.* ¶¶ 11–12 (cleaned up). But the plaintiff otherwise "offered no evidence that [the deli] did anything more than install a standard wood floor," such as evidence that the deli "installed an unusually slippery wood floor or that it installed its wood floor negligently." *Id.* ¶ 14. Because "the construction and maintenance of a slippery-when-wet floor surface does not of itself constitute negligence in premises liability cases," the lack of additional evidence proved fatal to that plaintiff's claim, and the same is true in this case. *Id.* (cleaned up). Here, like the plaintiff in *Jex II*, Stafford has offered no evidence to demonstrate negligence. *See id.* ¶¶ 14–15. The fact that Hilton installed tile in its elevator, operated a pool, and placed mats at its entryways and the entry to the pool simply "does not constitute a mode of operation that foreseeably could result in an inherently dangerous condition." *See id.* ¶ 15. Further, the additional fact of Hilton's installation of nonslip tile undercuts Stafford's argument even more than the existence of a "standard" wood floor in *Jex II*. Accordingly, Stafford's claim falters on this precedent alone.

¶15    But our relevant caselaw does not end there. In *Schnuphase v. Storehouse Markets*, 918 P.2d 476 (Utah 1996), while visiting the deli section of a grocery store, a plaintiff incurred injury when she fell after slipping on a scoop of ice cream dropped by another customer. *Id.* at 477. That plaintiff argued that "it was foreseeable that the ice cream would occasionally fall to the floor" and that the store thus "had a duty to take precautions against the foreseeable danger that someone would slip and fall," including things such as "installation of nonskid mats or any other traction-enhancing coverings, placement of warning signs indicating the possibility of encountering spilled ice cream, appointment of a

spill monitor in the deli section, or installation of a lower counter to facilitate employee monitoring of the area." *Id.* at 479. The Utah Supreme Court disagreed, stating that although a business "owner is charged with the duty to use reasonable care in maintaining the floors of his or her establishment[,] . . . if the [business] owner's duty required further safety measures" to avoid breaching that duty, it is unclear "how far the defendant would have to go in protecting the customers, both in method and in area." *Id.* (cleaned up). The court continued, "There does not appear to be any reasonable and practical answer to that inquiry." *Id.* (cleaned up).

¶16    Like the deli customer who spilled ice cream in *Schnuphase*, an unknown third party is alleged to have dripped water onto the floor of Hilton's elevator. And Hilton's measures convince us that "reasonable minds could not differ on the question of whether [Hilton] took reasonable precautions to protect its customers" and avoid breaching any duty owed to Stafford. *See id.* Hilton placed the mats where guests were likely to be wet and outside the pool, which led to a carpeted hallway nearly one hundred feet long before transitioning to tile. Under controlling precedent, Hilton is not required to cover the entirety of its tile flooring with mats or use carpet in place of tile. The choice to assist wet guests by placing mats only in areas where they were likely to be wet does not demonstrate a method of operation that causes foreseeability of injury or an inherent danger; to the contrary, it cuts against that conclusion by reducing the likelihood that water would be spread on the tile. And as to the choice of the tile itself, Stafford does not dispute that the tile is nonslip.

¶17    In short, "it is regrettable that [Stafford] suffered injuries. However, not every accident that occurs gives rise to a cause of action upon which the party injured may recover damages from someone. Thousands of accidents occur every day for which no one is liable in damages, and often no one is to blame, not even the ones who are injured." *See id.* at 479–80 (cleaned up).

CONCLUSION

¶18　Under the undisputed facts of this case, Stafford's claim fails as a matter of law. Accordingly, the district court did not err in granting summary judgment.

————