2007 UT App 363

**Wesley A. MATHESON and Lois Matheson, Plaintiffs and Appellants,**

v.

**MARBEC INVESTMENTS, LLC dba Elmwood Apartments, LLC, Defendant and Appellee.**

No. 20060543–CA.

Court of Appeals of Utah.

Nov. 8, 2007.

R. Phil Ivie, Provo, for Appellants.

Terry M. Plant and H. Justin Hitt, Salt Lake City, for Appellee.

Before GREENWOOD, Associate P.J., DAVIS and THORNE, JJ.

## OPINION

DAVIS, Judge:

¶ 1 Plaintiffs Wesley A. Matheson and Lois Matheson appeal the trial court's grant of summary judgment in favor of Defendant

Marbec Investments, LLC dba Elmwood Apartments, LLC. We affirm.

## BACKGROUND

¶ 2 Defendant purchased the Elmwood Apartments complex in May 2000. The complex had been built fifteen years prior, and there had been no structural changes since. Herbert Trayner, a principal of Defendant and a licensed general contractor, performed physical inspections of the complex on several occasions. These inspections included climbing the stairs several times and jumping up and down on the stairs to test their stability. As part of the purchase process, Defendant also hired an MAI appraiser[1] to inspect the complex. In the course of his inspection, the appraiser did not find any flaws or defects in the stairs of the complex.

¶ 3 Less than one year later, in February 2001, Plaintiffs were helping their son and daughter-in-law move out of an apartment located in the Elmwood complex. As Mr. Matheson was helping to carry a couch from the apartment and down a set of exterior stairs, a stair gave way and he fell to the ground. As a result of the fall, he sustained several injuries. Plaintiffs then filed suit against Defendant, claiming damages of $60,000 for medical expenses, $30,000 in lost wages, and loss of consortium suffered by Ms. Matheson.

¶ 4 At the close of discovery, Defendant filed a motion for summary judgment. After response and oral argument, the trial court granted Defendant's motion. In its decision, the trial court concluded that "the undisputed evidence clearly establishe[d] that Defendant had no notice of the problem with the stairs, actual or constructive." Plaintiffs now appeal.

## ISSUES AND STANDARD OF REVIEW

¶ 5 Plaintiffs contend that the trial court erred in granting summary judgment, arguing that there was an issue of material fact as to whether Defendant had constructive notice of the defect in the stairs. *See generally* Utah R. Civ. P. 56(c) (allowing summary judgment only when there is "no

genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law"). Plaintiffs additionally argue that summary judgment was improper because they should have been allowed to rely on the doctrine of res ipsa loquitur to avoid having to show constructive notice of the stair defect. "In the context of a summary judgment motion, which presents a question of law, we employ a correctness standard and view the facts and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Dowling v. Bullen,* 2004 UT 50, ¶ 7, 94 P.3d 915. Further, we recognize that "because negligence cases often require the drawing of inferences from the facts, which is properly done by juries rather than judges, 'summary judgment is appropriate in negligence cases only in the clearest instances.' " *Nelson v. Salt Lake City,* 919 P.2d 568, 571 (Utah 1996) (quoting *Dwiggins v. Morgan Jewelers,* 811 P.2d 182, 183 (Utah 1991)).

## ANALYSIS

### I. Constructive Notice

¶ 6 This case is one in which "[D]efendant did not create the unsafe condition, and is responsible for it only in the context of maintenance, not for its existence in the first place." *Goebel v. Salt Lake City S. R.R. Co.,* 2004 UT 80, ¶ 20, 104 P.3d 1185 (internal quotation marks omitted). In such a situation,

> "fault cannot be imputed to the defendant so that liability results therefrom unless two conditions are met: (A) that he had knowledge of the condition, that is, either actual knowledge, or constructive knowledge because the condition had existed long enough that he should have discovered it; and (B) that after such knowledge, sufficient time elapsed that in the exercise of reasonable care he should have remedied it."

*Id.* ¶ 19 (quoting *Schnuphase v. Storehouse Mkts.,* 918 P.2d 476, 478 (Utah 1996)). The trial court determined that the first condition had not been met under the facts of this

---

1. This is the highest level of certification available for an appraiser.

case—i.e., that Plaintiffs' evidence did not create an issue of fact regarding Defendant's knowledge of the stair defect—and granted summary judgment on this basis.

¶ 7 Plaintiffs concede that Defendant did not have actual notice of the defect in the stairs, but Plaintiffs argue that their evidence created an issue of fact regarding whether Defendant had constructive notice of the condition. Constructive notice is "where information or knowledge of a fact is imputed to a person by law 'because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.'" *In re Discipline of Sonnenreich*, 2004 UT 3, ¶ 22 n. 9, 86 P.3d 712 (quoting *Black's Law Dictionary* 733 (6th ed.1991)); *see also Meyer v. General Am. Corp.*, 569 P.2d 1094, 1097 (Utah 1977) ("Constructive notice can occur when circumstances arise that should put a reasonable person on guard so as to require further inquiry on his part."). Thus, Plaintiffs argue, and Defendant does not disagree, that because of the age of the complex and the nature of the stairs, Defendant was under a duty to inquire into the safety condition of the stairs, along with the condition of the remainder of the apartment complex. But Defendant did just that. After Trayner's initial inspections, Defendant hired an MAI appraiser to perform a complete inspection of the complex, which inspection found nothing of concern with the stairs. We agree with Defendant that in the absence of some other indication that there was a problem with the stairs, the inspections performed were completely reasonable under these circumstances and satisfied Defendant's duty of proper diligence.

¶ 8 Plaintiffs agree that such actions may be sufficient when dealing with an average purchaser. But Plaintiffs argue that we should apply a higher duty here and that a more thorough inspection should have been required because Defendant was in the business of buying properties and because Defendant's principal, Trayner, was a licensed contractor. Plaintiffs also argue that an increased sensitivity to the stair integrity was necessary because the stair treads were wood wrapped in carpet, the stairs were exposed to the elements, and the stairs were of unique design.[2] Plaintiffs claim that in such a situation, Defendant had a higher duty, requiring Trayner to "verify whether or not the stair tread fit into the pock[ets] on the stair stringers" and to "inspect the general condition of the wood."

¶ 9 In *Mitchell v. Christensen*, 2001 UT 80, 31 P.3d 572, the Utah Supreme Court stated that "in determining what constitutes reasonable care in the discovery of defects, the proper standard is whether the defect would be apparent to ordinary prudent persons with like experience, not to persons with specialized knowledge in the field of construction or real estate." *Id.* ¶ 12. Plaintiffs would focus on the phrase "with like experience" to assert that someone with Trayner's background would have been aware of the possible problem with the stairs at issue here. We see no record citations, however, supporting such an inference other than the general references to Trayner's years of work, previous projects, and certification as a general contractor. We see no evidence of his actual experience constructing stairs in general, let alone his experience respecting this type of stair design. Indeed, at oral argument, Plaintiffs' counsel asserted that these stairs were of a unique design and commented that they were something with which Trayner had no experience. Thus, we fail to see what past experience Trayner had that would have alerted him to any increased possibility of a problem with the stairs of this apartment complex or would have imposed a higher duty than that of an ordinary prudent purchaser.[3]

---

**2.** These particular stairs had grooves made in the stair stringers wherein the stair treads were meant to fit securely, as opposed to relying on metal brackets to support the stair treads.

**3.** Further, the *Mitchell* decision clarifies that even when the prudent person of like experience *would* be on notice of the possible defect, this simply requires further action, i.e., an inspection by an expert. *See Mitchell v. Christensen*, 2001 UT 80, ¶ 13, 31 P.3d 572 ("However, although the proper standard for the discoverability of a defect is that of an ordinary prudent person, this does not mean that inspection by an expert will never be required. Indeed, under certain circumstances, a reasonably prudent buyer should be put on notice that a possible defect exists,

¶ 10 The only evidence we see that may support the view that Trayner's experience would have made him more aware of the potential stair problem is the affidavit testimony of Plaintiffs' expert, Dennis Brunetti. Brunetti's affidavit states:

[I]t is my opinion that a thorough inspection of the stairs at the Elmwood Apartments would have put an inspector with Herbert Trayner's experience on notice that there were gaps where the stair treads intersect with the pockets on the stair stringers and that such an inspector would have noticed cracking of an existing stair tread on the stairs leading from Apartment 16.

... [G]iven my understanding of Mr. Herbert Trayner's experience as a general contractor[,] a reasonable inspection performed by him would have alerted him to the fact that the wood stairs on which Wesley Matheson was injured, having been built some 20 years prior to the accident and being wrapped with indoor outdoor carpeting and designed the way they were designed, lacked sufficient integrity and the condition of the stairs posed an unsafe condition for tenants and other persons visiting the Elmwood Apartments.

However, in his prior deposition testimony, Brunetti seemed to claim quite the opposite:

Q. .... [S]hould he have picked up on these code violations?

A. Mr. Trayner himself?

Q. Yes.

A. I don't know how he could have.

Q. Okay. And so what he should have done, and I think you're clear on this, is made sure that it was inspected by a certified appraiser or inspector, someone with superior knowledge to him to see if there were issues or problems?

A. That would be the due diligence that could have or should have been followed, right.

. . . .

Q. .... I want to clarify this. I think you've already testified to this but I want to be certain, that if he did that, if he had

necessitating either further inquiry of the owner ... or inspection by someone with sufficient ex-

an MAI appraiser come in and review this property as a prospective buyer he would have fulfilled his obligation as you understand it?

A. As I understand it, yes.

We determine that Plaintiffs are not allowed to create an issue of material fact in such a way.

¶ 11 Plaintiffs argue that although the inconsistency in Brunetti's statements will certainly bear on his credibility, such an assessment is the role of the jury and may not be made by the trial court in a summary judgment proceeding. We recognize that

[t]he purpose of summary judgment is not to weigh the evidence. But when a party takes a clear position in a deposition, that is not modified on cross-examination, he may not thereafter raise an issue of fact by his own affidavit which contradicts his deposition, unless he can provide an explanation of the discrepancy. A contrary rule would undermine the utility of summary judgment as a means for screening out sham issues of fact.

*Webster v. Sill,* 675 P.2d 1170, 1172–73 (Utah 1983) (citations omitted). Plaintiffs provide no explanation for Brunetti's change of view from his deposition testimony, and thus, Brunetti's subsequent affidavit is not sufficient to raise an issue of material fact as to the question of constructive notice. *See id.*

## II. Res Ipsa Loquitur

¶ 12 Plaintiffs also argue that they should be allowed to rely on the doctrine of res ipsa loquitur to avoid having to show constructive notice. This doctrine applies when

(1) the event causing the damage is of a type that ordinarily would not happen except for someone's negligence; (2) the damage must have been caused by an agency or instrumentality within the exclusive control of the defendant; and (3) the plaintiff's own use of the agency or instrumentality was not primarily responsible for the injury.

pertise to appraise the defect."). Such an inspection was performed here.

*Ballow v. Monroe,* 699 P.2d 719, 721 (Utah 1985). Although Plaintiffs argue that each of these three elements is met, this court has previously specified that "application of res ipsa loquitur presupposes a plaintiff's inability to point to the specific allegedly negligent act which caused the injury." *Hornsby v. Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints,* 758 P.2d 929, 934 (Utah Ct.App.1988). Otherwise, "[i]f the 'evidence in the case reveals all of the facts and circumstances of the occurrence and clearly establishes the precise allegedly negligent act which is the cause of [a] plaintiff's injury,' then res ipsa loquitur is not applicable." *Id.* (quoting *Roylance v. Rowe,* 737 P.2d 232, 235 (Utah Ct.App.1987)).

¶ 13 Here, the allegedly negligent act that caused the accident was Defendant's failure to adequately inspect the stairs and to discover and remedy the defect. The details of the inspections performed, and any of their potential shortcomings, are clearly established by the undisputed facts, and therefore, the doctrine of res ipsa loquitur is not applicable. *See id.; see also Kusy v. K–Mart Apparel Fashion Corp.,* 681 P.2d 1232, 1236 (Utah 1984) (determining that "[a] res ipsa instruction would not be appropriate as to the theory of negligent failure to inspect" because there is "nothing to infer about the cause of the accident so far as it pertains to this theory of responsibility"), *overruled on other grounds by Randle v. Allen,* 862 P.2d 1329, 1336 (Utah 1993). Instead, the real question at issue is whether the inspections and other actions performed by Defendant were such that they constituted a breach of Defendant's duty of care, and the res ipsa loquitur doctrine has no application to such a question. *See Kusy,* 681 P.2d at 1236.

### CONCLUSION

¶ 14 We conclude that the trial court did not err in its determination that Defendant did not have constructive knowledge of the stair defect. The inspections performed were reasonable under the circumstances and fulfilled Defendant's duty of proper diligence. We further determine that the res ipsa loquitur doctrine has no application in this case and that the trial court did not err

in disallowing reliance on this doctrine. We therefore affirm.

¶ 15 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and WILLIAM A. THORNE JR., Judge.