**2016 UT App 158**

## THE UTAH COURT OF APPEALS

ELIZABETH MACFARLANE,
Appellant,
*v.*
APPLEBEE'S RESTAURANT, AMERICAN FORK APPLETTE LLC,
AND JOHN D. PRINCE,
Appellees.

Opinion
No. 20140991-CA
Filed July 29, 2016

Fourth District Court, Provo Department
The Honorable Fred D. Howard
No. 120400036

James G. Clark and Dallas B. Young, Attorneys
for Appellant

Heinz J. Mahler, Kirk G. Gibbs, and Samuel A.
Goble, Attorneys for Appellees

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and KATE A. TOOMEY concurred.

ROTH, Judge:

¶1     Elizabeth MacFarlane appeals the district court's grant of summary judgment in favor of Applebee's Restaurant, American Fork Applette LLC, and John D. Prince (collectively, the Restaurant). We affirm.

## BACKGROUND[1]

¶2 In January 2008, MacFarlane slipped on ice and fell while walking in the parking lot next to an Applebee's Restaurant in the American Fork Commercial Center (the Shopping Center), a large shopping center in which the Applebee's Restaurant occupied a detached building. At the time of the incident, the Restaurant leased 48,545 square feet of space in the Shopping Center from AFCC Limited (the Landlord). The Restaurant's building occupies approximately 5,100 square feet of the leased space, with a parking area comprising most of the remainder of what the ground lease (the Lease) described as the "Leased Premises." In the Lease, the Landlord agreed to "provide all necessary parking for [the Restaurant's] customers and employees" but stated that the parking "shall be non-exclusive and in compliance with the Shopping Center criteria" as well as several existing covenants and cross-easements that encumbered the property. The Landlord was also "responsible for the maintenance of all common areas," for which the Restaurant was required to "pay a portion of the . . . maintenance cost based on a prorata percentage." In this regard, the Lease stipulated that "[a]ll common areas and facilities which [the Restaurant] may be permitted to use and occupy are to be used and occupied under a revocable license, coterminous with this Lease."

¶3 MacFarlane filed a premises liability complaint against the Restaurant in January 2012, claiming that the Restaurant failed to fulfill its duty to clear the parking lot of hazardous ice or warn her of the danger. She alleged that the Restaurant had negligently failed to "remove, salt, sand, or warn of ice in the

---

1. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *Ockey v. Club Jam*, 2014 UT App 126, ¶ 2 n.2, 328 P.3d 880 (citation and internal quotation marks omitted).

parking lot" when it knew, or should have known, that "the ice in the parking lot created a foreseeable hazard to patrons and/or invitees of the business" and that "the ice needed to be eliminated, neutralized, or [a] warning should have been given." MacFarlane claimed that as a result of the Restaurant's negligence she suffered injuries and special damages, including "medical bills, lost wages, and the loss of future earning ability."

¶4     Among other defenses to MacFarlane's claims, the Restaurant asserted that it was "not the owner[], or in control, of the parking lot in which [MacFarlane] allegedly slipped and fell." Rather, it claimed that "[t]he duty to keep the parking lot free of snow and ice, if any, was at [the] relevant time . . . with [the Landlord], . . . the property owner of the parking lot."[2] The Restaurant subsequently moved for summary judgment, arguing that it did not owe MacFarlane a duty, because although it leased the parking lot, it did not own or control the parking lot.

¶5     The district court granted the Restaurant's summary judgment motion and dismissed MacFarlane's claim. It reasoned that summary judgment was appropriate because, "even when viewing the facts in the light most favorable to [MacFarlane], [the Restaurant] did not have ownership or control over the parking lot, and thus did not have a duty of care towards [MacFarlane]." The court determined that the Lease made the Landlord "responsible for maintenance of all common areas," which "included all snow removal during the winter months," and that the "necessary parking . . . was 'non-exclusive.'" Thus, the court concluded that the Landlord "explicitly retained control over the parking lot, including responsibility for snow removal," and that "because the accident occurred outside an area controlled by [the Restaurant]," judgment in favor of the

2. The Landlord was subsequently added as a party in an amended complaint but successfully moved to dismiss the claims against it on statute of limitations grounds.

Restaurant was proper as a matter of law. MacFarlane appeals this ruling.

ISSUE AND STANDARD OF REVIEW

¶6      MacFarlane argues that the district court erred when it granted summary judgment in favor of the Restaurant on the basis that the company owed her no duty to maintain the parking lot in a reasonably safe condition. "We review a [district] court's summary judgment [decision] for correctness, considering only whether the [district] court correctly applied the law and correctly concluded that no disputed issues of material fact existed." *Hermansen v. Tasulis*, 2002 UT 52, ¶ 10, 48 P.3d 235.

ANALYSIS

¶7      MacFarlane argues that we should reverse the district court's grant of summary judgment in favor of the Restaurant because the Restaurant had a duty under common law principles of premises liability to maintain the parking lot in a reasonably safe condition, which it breached by failing to clear the ice in the parking lot or warn her of the hazard. According to MacFarlane, the Restaurant's duty arose out of its possession and control of the parking lot as a leaseholder. She asserts that the parking lot was part of the leased premises that the Restaurant occupied and for which it paid rent and that by virtue of its leasehold, the Restaurant "had possessory rights in the entire portion" of the space it occupied, which included both the restaurant building and the adjacent parking area. In this regard, she contends that although the Lease created a contractual obligation for the Landlord to perform "routine maintenance such as snow removal and ice remediation," the Restaurant nonetheless "had full authority to perform [the routine snow and ice removal] because nothing in [the Lease] prohibit[ed]" it from doing so.

She further argues that the Restaurant's duty to her was nondelegable and that the Landlord's obligation under the Lease to maintain the parking lot could not legally insulate the Restaurant from its own primary responsibility as the leaseholder.

## I. Only a "Possessor" of Land Has a Duty to an Invitee Under Principles of Premises Liability.

### A.      A "Possessor" of Land's Duty to Invitees

¶8      To prevail on a negligence claim, "a plaintiff must establish, among other things, that the defendant owed a duty of care to the plaintiff." *See Williams v. Bench*, 2008 UT App 306, ¶ 21, 193 P.3d 640. There is, however, a distinction between duties that arise due to a person's or entity's affirmative actions and those that arise due to omissions. *See B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 7, 275 P.3d 228. In general, "we all have a duty to act reasonably in our affirmative acts." *Hill v. Superior Prop. Mgmt. Servs., Inc.*, 2013 UT 60, ¶ 10, 321 P.3d 1054. But "passive inaction, a failure to take positive steps to benefit others, or to protect them from harm not created by any wrongful act of the defendant . . . generally implicates a duty only in cases of special legal relationships." *See Jeffs*, 2012 UT 11, ¶ 7 (citation and internal quotation marks omitted); *see also Hill*, 2013 UT 60, ¶ 10 (noting that "no such duty [to act reasonably] attaches with regard to omissions except in cases of a special relationship").

¶9      The legal relationship between a possessor of land and his or her invitees to that land is one such special relationship. *See* Restatement (Second) of Torts § 314A(3) (Am. Law Inst. 1965) ("A possessor of land who holds it open to the public is under a . . . duty to members of the public who enter in response to his invitation."); *see also Jeffs*, 2012 UT 11, ¶ 7. "[P]ossessors [of land] owe significant duties to invitees who come onto their property—including affirmative duties to remedy or warn against dangerous conditions." *Hill*, 2013 UT 60, ¶ 21.

MacFarlane claims that the Restaurant owed her a duty to remove the ice or warn her of its presence because the Restaurant was a possessor of the parking lot where her injury occurred and she was in the parking lot as the Restaurant's invitee.[3]

¶10    "The duty of care that possessors of land in Utah owe to invitees upon their property is set forth in sections 343 and 343A of the Second Restatement of Torts." *Hale v. Beckstead*, 2005 UT 24, ¶¶ 7, 17, 116 P.3d 263. Restatement (Second) of Torts section 343, the section most pertinent to this case, states,

> A possessor of land is subject to liability for physical harm caused to his invitees by a [dangerous] condition on the land if . . . he (a) knows or by the exercise of reasonable care would discover the [dangerous] condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (Am. Law Inst. 1965). Thus, the central question in this case is whether the Restaurant is "[a] possessor of land." *See id.* If the Restaurant is not a possessor of the land where the injury occurred, the duty outlined in section 343 of the Restatement attendant to the special relationship between possessors of land and invitees will not arise. *See Hill*, 2013 UT 60, ¶¶ 21, 29 (noting that a party who "is not a possessor . . . has no duty as such").

---

3. The parties do not dispute that MacFarlane was the Restaurant's invitee on the occasion of her fall.

B.     The Core Capacities of a "Possessor" of Land Under the
       *Hill* Decision

¶11    In *Hill v. Superior Property Management Services, Inc.*, 2013
UT 60, 321 P.3d 1054, the Utah Supreme Court addressed the
question of what constitutes a possessor of land in the context of
a premises liability negligence case. *Id.* ¶¶ 21–29. While noting
that it had "not articulated a comprehensive list of attributes of a
'possessor,'" the court stated that it had "generally invoked the
standard for invitees in the Restatement (Second) of Torts." *Id.*
¶ 22; *see also Hale*, 2005 UT 24, ¶ 17 ("Utah law does adopt the
Restatement's definition of a landowner's duty to invitees upon
his property."). The Restatement (Second) of Torts defines
"possessor" as

> (a) a person who is in occupation of the land with
> intent to control it or (b) a person who has been in
> occupation of land with intent to control it, if no
> other person has subsequently occupied it with
> intent to control it, or (c) a person who is entitled to
> immediate occupation of the land, if no other
> person is in possession under Clauses (a) and (b).

Restatement (Second) of Torts § 328E (Am. Law Inst. 1965).
Based on this definition, the supreme court stated that "control
stemming from actual occupation . . . is the hallmark of
possessor status" and that "the degree of control [must] be
substantial" in order for a party to qualify as a possessor. *Hill*,
2013 UT 60, ¶¶ 22–23 (internal quotation marks omitted). In this
regard, a possessor must have "both the rights and the
corresponding abilities to deal with the [land where the injury
occurred] as he sees fit." *Id.* ¶ 24. In other words, a possessor of
land must have "the control necessary to undertake plenary
care." *See id.* ¶ 29; *see also id.* ¶ 23 ("Those who have qualified as
possessors in our cases have been landowners and others
exercising plenary control over . . . [the] premises.").

¶12    In *Hill*, the plaintiff lived in a condominium development and was injured when she tripped on protruding tree roots in the grassy common area appurtenant to her unit. *Id.* ¶¶ 1, 4. She sued for negligence both the homeowners association and the landscape maintenance company that the homeowners association had engaged to perform specified maintenance in the common area. *Id.* ¶ 5. The lower court dismissed the negligence suit against the landscape maintenance company because it found that the company "owed [the plaintiff] no duty of care" where, among other things, it "exercised insufficient control over the property to be subject to premises liability." *Id.* ¶ 7. The supreme court affirmed the dismissal. *Id.* ¶¶ 2, 29.

¶13    In so doing, the court highlighted two "core capacities" that marked a possessor of land's plenary control: "the right to exclude others from the property altogether" and "the right to take all necessary precautions and make necessary repairs." *Id.* ¶¶ 24, 27. The court stated that "[t]he right of exclusion is significant" because it permits the "person with such a right . . . [to] effectively limit her exposure to liability" by permitting that person to "determine how broadly to open her property to others, weighing the economic benefits against the costs (including increased liability)." *Id.* ¶ 25. Regarding the right to take all necessary precautions, the court stated that this right "is also pivotal," particularly in light of a possessor's duty to "'exercise reasonable care' in identifying dangerous conditions [on the land] and in protecting invitees against them." *Id.* ¶ 26 (quoting Restatement (Second) of Torts § 343). The court reasoned that the right to take necessary precautions and make repairs enables a person "with plenary control of property . . . to take precautions to prevent business invitees . . . from encountering dangerous conditions on the land," noting that "a person with less than full control over property might lack the ability to take measures necessary to protect an invitee against such conditions." *Id.*

¶14 The court determined that the landscape maintenance company lacked both of the "core capacities" it identified as incumbent on possessors of land. *Id.* ¶ 27. In particular, it determined that there was "no indication that [the landscape company had] the right to exclude others from" the common area property. *Id.* Rather, it noted, "[a]ll indications are that [the homeowners association had] retained that right." *Id.* It also determined that the landscape maintenance company had "only limited authority to perform repairs" and that "[m]ost *major* repairs [were] beyond the scope of [the landscape company's] authority." *Id.* ¶ 28. The court, therefore, concluded that "despite [the landscape company's] many duties under the management contract, it lacks plenary authority to engage in whatever measures it might deem necessary to prevent harm to those who visit the property" and that in such circumstances "possessor liability would extend to injuries resulting from hazards [the landscape company had] little or no control over." *Id.* ¶ 29. As a result, it held that "[a] party like [the landscape company] who lacks the control necessary to undertake plenary care is not a possessor, and thus has no duty as such." *Id.*

¶15 Applying the principles of *Hill* and the Restatement (Second) of Torts to the instant case, we conclude that the district court did not err when it determined that the Restaurant did not have sufficient control over the parking lot where MacFarlane was injured to make it a "possessor" for purposes of premises liability.

## II. The Restaurant Is Not a Possessor of the Parking Lot for Purposes of Premises Liability Because It Lacks Requisite Control.

¶16 MacFarlane's argument that the Restaurant controlled the adjacent parking lot rests on the Lease itself. She contends that the Restaurant's status as lessee necessarily includes the right to exclude others and the right to remediate dangerous conditions. As proof of the latter, she points to the fact that the parking lot

was part of the leased premises and that nothing in the Lease "prevents [the Restaurant] from performing maintenance on the parking lot area." "When possible, the court should give effect to all words and clauses of the lease, and construe the lease as a whole." *Stevensen v. Bird*, 636 P.2d 1029, 1031 (Utah 1981) (citation and internal quotation marks omitted). A review of the Lease as a whole indicates that although the "leased premises" include the parking area adjacent to its restaurant building, the Restaurant "exercise[s] insufficient control over the property to be subject to premises liability." *Hill*, 2013 UT 60, ¶ 7. In particular, the Lease provides the Restaurant little ability to "limit [its] exposure to liability" or "determine how broadly to open [the parking lot] to others" by "weighing the economic benefits against the costs (including increased liability)" for doing so. *See id.* ¶ 25. It also affords the Restaurant significantly "less than full control over [the parking lot]" to make repairs and engage in necessary maintenance. *See id.* ¶ 26. As a result, we conclude that the Restaurant has neither the right to exclude persons from the parking lot nor the "plenary authority to engage in whatever measures it might deem necessary to prevent harm to those who visit the property." *See id.* ¶ 29.

¶17 First, the provision of the Lease that relates directly to parking plainly limits the Restaurant's rights to exclude others. *See Holladay Towne Center, LLC v. Brown Family Holdings, LC*, 2008 UT App 420, ¶ 10, 198 P.3d 990 (noting that a "[l]ease is a contract," which we interpret by "first look[ing] to the contract's four corners to determine the parties' intentions, which are controlling," and further that "[i]n the absence of ambiguity, . . . we determine the parties' intentions as a matter of law under the plain contractual language" (citations and internal quotation marks omitted)). Provision Twenty-Two of the Lease states that the Landlord "will provide all necessary parking for [the Restaurant's] customers and employees," and specifies that "[s]uch parking shall be *non-exclusive*." (Emphasis added.) The Lease also requires the nonexclusive parking area to be shared

with others "in compliance with the Shopping Center criteria" and certain agreements establishing easements in favor of other shopping center tenants "which encumber the Leased Premises."[4] And the Restaurant not only agreed to be bound by these other agreements, but it also acknowledged that the other agreements "shall control" "[i]n the event of conflict between [them and] the terms of this Lease." Thus, the nonexclusive character of the parking lot and the overlay of other easement agreements to which it is subject plainly indicate that the Restaurant lacks the right to exclude others from that portion of the leased premises.

¶18     Second, the Lease does not authorize the Restaurant to maintain or make necessary repairs to the parking area. The Lease expressly states that the "Landlord shall be responsible for the maintenance of all common areas," and neither party on appeal contests that the Landlord's common-area maintenance responsibilities include "all snow removal during the winter months." In other words, the entire onus of the maintenance responsibility of the common areas, including the parking lot, was placed on the Landlord. Further, when viewed as a whole, the Lease does not grant the Restaurant the sort of plenary ability to maintain, make repairs, and make changes to the parking lot that *Hill* described as "pivotal" to this aspect of the control analysis. 2013 UT 60, ¶ 26. Indeed, as in *Hill*, "[m]ost *major* repairs are beyond the scope of [the Restaurant's] authority," *see id.* ¶ 28, given that under the Lease, the Landlord is contractually obligated to provide the "parking areas," including the "paving, striping, traffic signs, and drainage"— improvements all of a type that seem to go directly to making the parking lot safe. And any repair obligations the Restaurant

---

4. The Lease states that use of the leased premises (including the parking lot portion) must comply with other easements and restrictions encumbering the property.

has in the parking lot appear to involve only "areas modified by [it]"; there is no claim here that the Restaurant made any such modifications.[5]

¶19    In sum, the Lease defines the Restaurant's entire relationship to the parking lot as subordinate to the role and authority of the Landlord, with the Restaurant's rights in the parking lot limited to a non-exclusive right of use in common with others and with no attendant responsibility or authorization for general maintenance, including snow removal. Thus, MacFarlane's reliance on the Lease as the source of the Restaurant's duty to her is misplaced, because the Lease does not provide the Restaurant the "core capacities" of control required of a possessor of land. *See id.* ¶ 27. The Lease neither permits the Restaurant to exclude persons from the parking lot nor grants the Restaurant plenary authority to make repairs and perform necessary maintenance to protect its invitees from dangerous conditions. Therefore, like the landscape company at issue in *Hill*, the Restaurant "lacks the control necessary to undertake plenary care." *See id.* ¶ 29. As a result, the Restaurant "is not a possessor, and has no duty as such." *See id.*

---

5. In her reply brief, MacFarlane points us to provisions in the Lease that she contends demonstrate that the Restaurant had possessory control over the parking lot. In particular, she points out that the Restaurant had "the right to construct a new building on any part of the Leased Premises"; that it had the "right to place signage on the Leased Premises"; and that it had the "unilateral right to grant a utility easement over the Leased Premises." However, these are prospective, theoretical rights, and MacFarlane has not persuaded us that the fact that the Restaurant might acquire expanded rights in the future by exercising certain lease options modified or enhanced the Restaurant's rights in the parking lot at the time of MacFarlane's accident.

¶20 MacFarlane's arguments do not persuade us that a different conclusion is warranted. MacFarlane argues that the Restaurant had a duty because it *could* have taken precautions to maintain the ice in the parking lot immediately adjacent to its building—that nothing in the Lease affirmatively prevented it from doing so. But the theoretical ability of a lessee to engage in certain prevention measures on a leased property cannot establish a duty in the absence of a special relationship. And the *lack* of a prohibition against doing some action in a lease cannot itself create the sort of possessory interest that creates the special relationship necessary to require a party to take affirmative measures to avoid harm to another. MacFarlane's argument inverts the analytical sequence by assuming that the duty to act to avoid harm exists before the required special relationship has been established.

¶21 MacFarlane also contends that the Lease provision making the Landlord responsible for the parking lot maintenance amounts to an attempt by the Restaurant to delegate to the Landlord its own duty to MacFarlane as a possessor of property. She correctly points out that a "possessor of property has 'a nondelegable duty to keep the premises reasonably safe for business invitees.'" (Quoting *Sullivan v. Utah Gas Serv. Co.*, 353 P.2d 465, 466 (Utah 1960).) But that is not what happened here. Rather, the Lease's allocation of responsibility to the Landlord for parking lot maintenance is more accurately characterized as the Landlord's *retention* of common area maintenance responsibility—as the landowner—than a *delegation* of responsibility from the Restaurant. *See Delegation of Duties*, Black's Law Dictionary (10th ed. 2014) ("A transaction by which a party to a contract arranges to have a third party perform the party's contractual duties."). And delegation is an issue only if a duty has arisen in the first place. *See Price v. Smith's Food & Drug Ctrs., Inc.*, 2011 UT App 66, ¶ 26, 252 P.3d 365 ("A nondelegable duty means that an employer of an independent contractor, by assigning work *consequent to a duty*, is not relieved from liability

arising from the delegated duties negligently performed." (emphasis added) (citation and internal quotation marks omitted)). Because we have determined that the Restaurant had no duty to MacFarlane here, it follows that the nondelegation doctrine does not come into play in this case.[6]

¶22 It is also worth noting that other jurisdictions have applied similar reasoning to decide that a lessee in a multitenant shopping center does not owe a duty to keep the common areas of the shopping center free of hazards for invitees. *See, e.g.*, *Holmes v. Kimco Realty Corp.*, 598 F.3d 115 (3d Cir. 2010). In *Holmes*, the invitee of a store in a multitenant shopping center slipped and fell on ice while returning to his car after making purchases at the store. *Id.* at 116–17. Like the present case, the store's lease provided that the tenants of the center and their invitees "enjoyed a non-exclusive right to use the parking lot and other common areas" and that the landlord was "required . . . to maintain the Common Areas, including snow

---

6. MacFarlane also briefly contests the factual basis of the district court's ruling. She first argues that the district court improperly relied on the affidavit of the Restaurant's Vice President of Operations to interpret the contract, and, second, suggests that it is not clear that the parking lot is included as "common area" subject to the common area maintenance provision because the Lease did not specifically define what areas are designated as "common area." As to the first, we conclude that the Lease itself supports the district court's decision without consideration of the affidavit and we therefore do not further address this issue. As to the second, MacFarlane did not raise this contention in her opening brief and only asserted it in passing—a mere three sentences—in her reply brief. We "will not consider matters raised for the first time in the reply brief." *Davis v. Davis*, 2011 UT App 311, ¶ 14, 263 P.3d 520 (citation and internal quotation marks omitted). Therefore, we decline to reach these arguments.

removal," for which each tenant "was required to pay a prorata share of common area maintenance costs." *Id*. at 117. The Third Circuit Court of Appeals affirmed the grant of summary judgment in favor of the store tenant, concluding that the state in which the injury occurred "would not impose a duty on an individual tenant for snow removal from the common areas of a multi-tenant parking lot when the landlord has retained and exercised that responsibility."[7] *Id.* at 124–25.

---

7. *See also, e.g.*, *McDevitt v. Sportsman's Warehouse, Inc.*, 255 P.3d 1166, 1167 (Idaho 2011) (holding that a tenant in a multitenant shopping center was not liable for injury that occurred on the sidewalk in front of the tenant's store where the sidewalk was not part of the leased premises, where the tenant did not have control over the sidewalk, and where the tenant did not create the hazard); *Strahs v. Tovar's Snowplowing, Inc.*, 812 N.E.2d 441, 443–47 (Ill. App. Ct. 2004) (holding that where the landlord was responsible for snow and ice removal from the parking lot, the lessee of a store in a multitenant shopping center did not owe plaintiff a duty to remove ice in the parking lot or warn of the danger, even though the lease provided that "certain portions of the parking lot were for the use of [the tenant's] customers and employees" and that the tenant "had the right to give notice to [the landlord] if [the landlord] failed to properly remove snow and ice" or "remedy and fix the situation after 30 days" if the landlord did not); *Kandrac v. Marrazzo's Market at Robbinsville*, 57 A.3d 11, 12, 18 (N.J. Super. Ct. App. Div. 2012) (holding that "as a general rule, when a commercial tenant in a multi-tenant shopping center has no control or contractual obligation to maintain a parking lot shared with other tenants, the common law does not impose a duty upon the tenant to do so"); *DePompo v. Waldbaums Supermarket, Inc.*, 737 N.Y.S.2d 646, 646–47 (N.Y. App. Div. 2002) (holding that a supermarket operating in a multitenant shopping center was not liable to a customer who fell in the parking lot where the supermarket "did not own,

(continued…)

¶23 The Third Circuit also identified several policy considerations that supported the decision not to impose a duty on a lessee under such circumstances. The court reasoned that "[t]o oblige tenants [in multitenant shopping centers] to maintain common areas would result in substantially increased costs with little added benefit," particularly where "[l]andlords already have great incentive to keep the parking areas of their shopping centers free of snow, ice, and other hazards." *Id.* at 123–24. It also noted that the "risk of not imposing a duty on [the tenant] is minimal" where the landlord has a snow removal program in place and that if the tenant had a duty to maintain the parking lot, the result would be "duplicative effort and interference with the landlord's maintenance program" as well as "uncertainty with respect to the areas of the parking lot for which each tenant is responsible." *Id.* at 124. Finally, the court observed that injured customers were not left "without a remedy," because the landlord itself would generally have a duty to the plaintiff. *Id.* These considerations are also relevant to the present case, where the parking lot serves multiple tenants in the Shopping Center and the Landlord has both an incentive and a contractual responsibility to keep the parking lot free of snow and ice.

¶24 We conclude that under the Lease, the Restaurant is not a possessor of land in relation to the parking lot, and because it is not, no special relationship existed between the Restaurant and MacFarlane in relation to the condition of the parking lot at the time of her accident. Thus, the district court correctly determined

---

(…continued)

occupy, possess, or put to a special use the parking lot where the plaintiff fell, and . . . it had no right or obligation to maintain this area" and where the "lessor retained the obligation to maintain the parking lot and [the tenant] had the right to use the parking lot with other tenants of the shopping center").

that the Restaurant did not owe a duty to MacFarlane to clear the ice or warn her of the dangerous condition in the parking lot, and we affirm the court's decision to grant summary judgment in the Restaurant's favor.

## CONCLUSION

¶25     For the reasons stated above, we affirm the district court's grant of summary judgment in favor of the Restaurant.

———————